UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-2350 |
| ) | |
| 9511 W DEPOT ST, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

COMES NOW, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by its undersigned counsel, and for its Original Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) would respectfully show the Court the following:

## I.
## THE PARTIES

1. Mt. Hawley is an Illinois company organized under the laws of the State of Illinois, maintaining its principal place of business at 9025 North Lindbergh Drive in Peoria, State of Illinois. Mt. Hawley is not a mutual insurance company. Thus, Mt. Hawley is a citizen of the State of Illinois for purposes of diversity jurisdiction.

2. 9511 W Depot St, LLC ("WDS") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 4000 Macarthur Boulevard, Suite 550, Newport Beach, California 92660. The members of WDS are all individual citizens of the States of California and Delaware, including Phoenix Middle II, LLC, a California limited liability company whose managing member is Phoenix Partners II, LLC, which is a Delaware limited liability company, and Carson Faris, a resident of the State of California. Defendant WDS is accordingly a citizen of California and Delaware for purposes of

diversity jurisdiction. None of the members of WDS are citizens of the State of Illinois. Service of process on Defendant WDS may be accomplished by serving its registered agent for service, Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

## II.
## JURISDICTION AND VENUE

17. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4. This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201. An actual and substantial controversy exists between the parties. By this action Plaintiff Mt. Hawley seeks declarations that there is no coverage for the theft claim reported by WDS.

5. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(a) because a substantial part of property that is the subject of the action is situated in this District and Division. Additionally, a substantial portion of the events and omissions giving rise to this cause of action occurred in this District and Division.

## III.
## THE POLICY

6. WDS was the named insured under a commercial property policy of insurance issued by Mt. Hawley, policy number MCP0162752, effective September 15, 2017 to September 15, 2018 (the "Policy"), although the Policy was cancelled effective March 16, 2018. A certified copy of the Policy is attached hereto and incorporated herein as **Exhibit A**.

7. The property insured under the Policy was located at 9511 W. Depot Street, Yorktown, Indiana 47396 (the "Property"). The Property is a commercial warehouse.

8. The Policy has a total coverage limit of $5,000,000 for Building, Demolition & Increased Cost of Construction (B&C), and Loss to Undamaged Portion of Building (Coverage A), with a $250,000 sub-limit for Coverage A. The Policy has a $25,000 per occurrence deductible for All Covered Perils. Exhibit A at 0006.

9. The Policy provides, in relevant part, as follows:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\*\*\*

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

 **1. Covered Property**

  Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and is limited in **A.2.**, **Property Not Covered**, if a Limit of Insurance is shown in the Declarations for that type of property.

  **a. Building**, meaning the building or structure described in the Declarations, including:

   (1) Completed additions;

   (2) Fixtures, including outdoor fixtures;

   (3) Permanently installed:

    (a) Machinery and

    (b) Equipment; . . .

\*\*\*

Exhibit A at 0009.

10. The Policy also includes a Protective Safeguard Endorsement, which states as follows:

### PROTECTIVE SAFEGUARD ENDORSEMENT

As a condition of this insurance, it is understood and agreed that the protective devices or services set forth in the Schedule below will be maintained in complete working order.

### Schedule

| Protective Device or Service | Location |
|---|---|
| "BR-1" Automatic Burglar Alarm (central station) | 00001 |
| "P-1" Automatic Sprinkler System | 00001 |
| "UT-1" Utilities Turned On | 00001 |

**"P-1" Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means any automatic fire protective or extinguishing system, including connected sprinklers and discharge nozzles, ducts, pipes, vales, fittings, tanks, pumps and private fire protection mains.

\*\*\*

**"BR-1" Automatic Burglary Alarm**, protecting the entire building, that signals to an outside central station or a police station.

\*\*\*

**"UT-1"** Utilities are on to prevent freezing of any and all pipes and drains.

We will not pay for loss or damage if the protective safeguards or service listed in the above Schedule was not maintained in complete working order and such failure to maintain contributed directly or indirectly to the loss or damage or to the extent of such loss or damage.

Exhibit A at 0045-0046. Because the protective devices and services were either not present or functional at the time of loss, the Protective Safeguard Endorsement precludes coverage.

11. The Policy also includes the following Vacancy Conditions and Vacancy Permit Endorsement which preclude coverage:

> **E.   Loss Conditions**
>
> **6. Vacancy**
>
> **a. Description of Terms**
>
> (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
>
> ***
>
> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> (i) Rented to a lessee or a sub-lessee and used by the lessee or sublessee to conduct its customary operations; and/or
>
> (ii) Used by the building owner to conduct customary operations.
>
> (2) Buildings under construction or renovation are not considered vacant.
>
> **b.   Vacancy Provisions**
>
> If the building where the loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage occurs:
>
> (1)   We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
> (a)   Vandalism;

    (b)    Sprinkler leakage, unless you have protected the system against freezing;

    (c)    Building glass breakage;

    (d)    Water damage

    (e)    Theft; or

    (f)    Attempted theft.

***

## VACANCY PERMIT

When made a part of this policy, this endorsement changes the policy as follows:

***

A.    The VACANCY Loss Condition does not apply to direct physical loss or damage:

    1.    at the locations; and
    2.    during the Permit Period;

    shown in the Schedule or in the Declarations.

B.    This Vacancy Permit only provides Vandalism and/or Sprinkler Leakage coverage to the above listed premises and buildings, if an "X" is shown on the above schedule for the specific coverage.

The Permit Period listed in the Schedule is from September 15, 2017 or September 15, 2018.

Exhibit A at 0019, 0044.

    12.    Because it is undisputed that the Property was vacant for more than sixty days before the theft loss(es) at issue occurred, even if theft is a Covered Cause of Loss, coverage for theft is precluded under Vacancy Condition b.(1)(e) above.

## IV.
## FACTUAL BACKGROUND

13. WDS procured the Policy from Mt. Hawley in September 2017, at which time WDS was the mortgagee on the Property. WDS foreclosed on the Property soon thereafter.

14. On or about February 23, 2018, WDS submitted a claim for the theft of heavy gauge copper wiring at the Property. A date of loss was not provided; however, information recently provided by WDS indicates the initial theft was discovered months earlier, on or about October 24, 2017, and that subsequent thefts may have taken place between November 24 and November 26, 2017. WDS contacted the police on October 24, 2017 when it discovered the initial theft and reported a "ton of copper missing" on November 7, 2017. On November 29, 2017, WDS contacted the police again, stating it had a "major" copper theft and that it intended to have the building boarded up.

15. In response to the February 23, 2018 notice belatedly provided to Mt. Hawley, it hired Carl Todd of Engle Martin & Associates ("EMA") to inspect the Property.

16. On March 22, 2018, Mr. Todd inspected the Property and confirmed the alarm system was not functional at the time of loss and that the automatic sprinkler system was not active. He also confirmed the conduit was cut and the copper wiring had been removed by equipment capable of pulling large wire. Due to the size and quantity of the copper removed, Mr. Todd determined the theft likely occurred over a period of weeks. He also questioned whether the electrical power was on or if the thieves were able to remove the copper wiring without fear of electrocution.

17. On or about April 26, 2018, Mr. Todd requested information from WDS and its public adjuster, among other things seeking utility records to determine whether the heat was on in the building. On or about September 26, 2018, Mt. Hawley requested utility records and other

documents from WDS's public adjuster. Although some of the information had purportedly been provided to EMA, WDS failed to make Mt. Hawley aware of that, or provide Mt. Hawley the requested materials. Mt. Hawley followed up with WDS multiple times. On or about March 20, 2019, WDS began providing Mt. Hawley the information it had been requesting. Additional materials were submitted through the end of March; however, no documentation was provided evidencing the power was on when the thefts occurred or that the alarm system was functional in October 2017.

18. On June 12, 2019, Mt. Hawley denied WDS's claim because the Protective Safeguards Endorsement and other provisions preclude coverage.

## COUNT I - DECLARATORY JUDGMENT – NO COVERAGE

19. Mt. Hawley adopts and repeats the allegations in Paragraphs 1 through 18 above and for Paragraph 19 hereof as though the same were fully set forth herein.

20. The Policy does not provide coverage for the theft claim reported by Defendant. Specifically, coverage is not afforded under the Policy because the Protective Safeguards Endorsement precludes coverage.

21. Alternatively, the Policy does not provide coverage for the theft claim reported by Defendant because there is no coverage for theft that occurs while the Property has been vacant for sixty days or more.

## COUNT II – PREJUDICE DUE TO WDS'S VIOLATIONS OF ITS DUTIES AFTER LOSS

22. In addition, the Policy includes the following Duties After Loss provisions:

> **3. Duties In The Event of Loss Or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> \*\*\*
>
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
>
> (3) As soon as possible, give us a description of how, when and where the loss occurred.
>
> (4) Take all reasonable steps to protect the Covered Property from further damage . . .

Exhibit A at 0018.

23. Although WDS was aware of and reported the theft claim to the police on October 24, 2017, WDS did not report a claim to Mt. Hawley until five months later. Nor did WDS take reasonable steps to protect the property from further damage after the copper was stolen when an additional theft occurred and the sprinkler system froze because the utilities were not restored. Accordingly, the post loss duties set forth above were not complied with and this provides yet another basis for the preclusion of coverage for this loss.

24. For the foregoing reasons, Mt. Hawley seeks a declaratory judgment by this Court that no coverage was provided by the Policy for the theft claim and that all damage resulting from the theft(s) is not covered under the Policy.

## V. PRAYER

WHEREFORE, Plaintiff, Mt. Hawley Insurance Company, prays that this Court enter judgment finding and declaring the rights of the parties as follows:

1. A declaration that the Protective Safeguards Endorsement precludes coverage for the theft claim reported by Defendant and Defendant is barred from recovering damages related to Defendant's theft claim;

2. A declaration that Defendant's theft claim is not covered under the Policy because there is no coverage for theft occurring at a vacant property;

3. A declaration that Defendant's theft claim is not covered because it did not comply with the policy requirements and duties imposed upon an insured in the event of loss;

4. Costs of court, prejudgment and post-judgment interest as allowed by law; and

5. That the Court grant Mt. Hawley Insurance Company such other and further relief as it deems just and fit under the circumstances.

Respectfully submitted,

*/s/Meghan E. Ruesch*
Meghan E. Ruesch, No. 32473-49
Michael R. Giordano, No. 31317-53
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, Indiana 46202
mruesch@lewiswagner.com
mgiordano@lewiswagner.com
(317) 237-0500 x480 (Telephone)
(317) 630-2790 (Facsimile)
***ATTORNEY FOR MT. HAWLEY INSURANCE COMPANY***